UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT** | **CIVIL DOCKET NO. 6:22-cv-00146** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **MORBARK, LLC, ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR PARTIAL SUMMARY JUDGMENT (the "Motion") [Doc. 37] filed by Defendant and Cross-Claimant W.L. Doggett, LLC d/b/a Doggett Machinery Services (hereinafter, "Doggett"). Doggett seeks indemnification from Defendant Morbark, LLC (hereinafter, "Morbark") for attorney fees, costs, and expenses incurred in the underlying action. For the reasons that follow, Doggett's Motion is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises out of the sale of an allegedly defective Morbark 1100 Tub Grinder (the "Tub Grinder"), a mid-sized industrial tub grinder used to process and reduce waste. Doggett, a heavy equipment dealer, is in the business of purchasing industrial equipment from wholesalers and manufacturers, including Morbark, and then selling this equipment on the retail market to third parties. [Doc. 37-1, p.2; *see also* Doggett's Cross Claim, Doc. 23, at ¶ 2]. Morbark regularly furnished Doggett with its equipment for resale pursuant to an Authorized Dealer Agreement (the "Dealer Agreement"), entered into by Doggett and Morbark on June 14, 2011.

Important here, the Dealer Agreement contains the following indemnification provision:

> [Morbark] agrees to indemnify and hold [Doggett] harmless against any claims for injury, death, loss, damage, or expense, including attorney fees, <u>under the following circumstances</u>:
>
> a) arising out of any negligent installation, alteration or service work performed by Morbark on any Goods;
>
> b) resulting from Morbark's negligent failure to warn, instruct, or to provide operators' manuals relating to Goods distributed by Morbark to Doggett;
>
> c) any breach of this Agreement by [Morbark], or any negligence or willful misconduct by [Morbark];
>
> d) resulting from any **product defects** or design defects **related to manufacture** or production of the Goods or parts; or
>
> e) resulting from the Goods causing infringement of any patent, copyright or other proprietary rights if others.

[*See* "Morbark, Inc. Authorized Dealer Agreement,"[1] attached as Exhibit A-1 to Doggett's Motion for Partial Summary Judgment, Doc. 37-2] (emphasis added).

In July 2020, Plaintiff, Lafayette City-Parish Consolidated Government ("LCG"), purchased a Morbark 1100 Tub Grinder from Doggett, intending to use it to compost yard waste dropped off by Lafayette Parish residents. [Doc. 1-2 at ¶¶ 2-4]. However, when attempting to use the Tub Grinder, LCG alleges that it experienced a number of mechanical problems. Although Morbark and Doggett attempted to repair the equipment over a period of approximately 16 months, the Tub Grinder

---

[1] Pursuant to the terms of the Dealer Agreement, Doggett's period of appointment as an Authorized Dealer lasted for two years from the date the Agreement was signed and was automatically extended for one-year periods thereafter unless canceled by either party. [Doc. 37-2 at p. 1].

remained inoperable. [*Id.* at ¶¶ 5-6]. On December 9, 2021, LCG filed suit against Morbark (as the manufacturer of the Tub Grinder), Doggett (as the seller of the Tub Grinder), and Caterpillar, Inc. (as the manufacturer of the engine installed in the Tub Grinder), alleging liability against all three defendants jointly and *in solido*. [*Id.* at ¶ 11]. LCG's state court Petition alleged redhibitory defects in the Tub Grinder that existed at the time of manufacture and delivery of the Tub Grinder to LCG, as well as claims for breach of the warranty of fitness and the warranty against hidden defects. LCG sought recission of the sale, damages, attorney fees, and legal interest. [*Id.* at ¶ 25].

On August 15, 2022, Doggett formally tendered defense and indemnity to Morbark pursuant to the Dealer Agreement, which was rejected by Morbark. [Doc. 37-2]. Thereafter, on September 20, 2022, Doggett filed a cross-claim against Morbark, seeking defense and indemnity on LCG's underlying claims against it. [Doc. 23]. On April 26, 2023, LCG and Morbark settled their claims. [*See* Minutes of Settlement Conference Doc. 33]. As a result of that settlement, all claims asserted by LCG against Doggett and Morbark were dismissed, with Doggett having contributed nothing toward the settlement. As such, the only remaining cause of action in this matter is Doggett's cross-claim against Morbark for expenses incurred defending the lawsuit. [*Id.*].

In the instant motion, Doggett seeks summary judgment on its cross-claim against Morbark for indemnification, seeking attorney fees, costs, and expenses incurred by Doggett in this case, both in the underlying action and with respect to

Morbark's alleged breach of the indemnification provision in the Dealer Agreement. The issues have been briefed and the Motion is ripe for review.

## LAW AND ANALYSIS

### I. Summary Judgment Standard

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019) (citing *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d

293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

II. <u>Analysis</u>

The parties agree that Louisiana law governs the application and interpretation of the indemnity provision in the Dealer Agreement. In a diversity action, federal courts apply state substantive law and the choice-of-law principles of the forum state. *Crase v. Astroworld, Inc.*, 941 F.2d 265, 266 (5th Cir. 1991) (under *Erie* doctrine, Louisiana choice-of-law rules apply), *citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938). *See also Emps. Ins. Co. of Wausau v. Jennie V'S Seafood, LLC*, 970 F. Supp. 2d 509, 514 (E.D. La. 2013), *citing Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1421 (5th Cir. 1993). Furthermore, under Article

3537 of the Louisiana Civil Code, a contractual dispute in which the agreement at issue was negotiated and formed in Louisiana is generally governed by Louisiana law. *See Ross v. Digioia*, 2012 WL 5877843, at *2–3 (E.D. La. Nov. 20, 2012). Accordingly, the Court will apply Louisiana law.

Under Louisiana law, indemnity provisions are construed in accordance with general rules governing contract interpretation. *Liberty Mut. Ins. Co. v. Pine Bluff Sand & Gravel Co.*, 89 F.3d 243, 246 (5th Cir. 1996), *citing Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 626 (5th Cir. 1993). Once construed, the contract serves as the law between the parties. *Sears, Roebuck & Co. v. Shamrock Const. Co.*, 441 So.2d 379, 384 (La. App. 5th Cir. 1983). Further, Louisiana law provides that, "[a]greements to indemnify are [to be] strictly construed and the party seeking to enforce such an agreement bears the burden of proof." *Pine Bluff Sand & Gravel*, 89 F.3d at 246; *Abbott*, 2 F.3d at 626.

When the terms of a contract are unambiguous and do not lead to absurd consequences, courts interpret them as a matter of law. *Pine Bluff Sand & Gravel*, 89 F.3d at 246, *citing Abbott*, 2 F.3d at 626. *See also* La Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). However, when the relevant terms of a contract are ambiguous, courts must endeavor to ascertain the intent of the parties – often a fact-specific inquiry. *See, e.g., Couvillion v. Shelter Mut. Ins. Co.*, 672 So.2d 277 (La. App. 1st Cir. 1996) ("Where there is anything doubtful in indemnity agreements, the court must endeavor to ascertain the common

intent of the parties."), *citing Poole v. Ocean Drilling & Exploration Co.*, 439 So.2d 510, 511 (La. App. 1st Cir. 1983), *writ denied*, 443 So.2d 590 (La.1983); *Amoco Prod. Co. v. Fina Oil & Chem. Co.*, 670 So.2d 502, 511 (La. App. 1st Cir. 1996) ("In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all the surrounding circumstances.") (citations omitted), *writ denied*, 673 So.2d 1037 (La. 1996). And it is the Court that must determine, as a matter of law, whether a contract is ambiguous. *Amoco Prod. Co. v. Fina Oil & Chem. Co.*, 670 So.2d 502, (La. App. 1st Cir. 2/23/96), *writ denied*, 673 So.2d 1037 (La. 5/31/96).

In the instant case, Doggett argues that the following language contained in the Dealer Agreement requires Morbark to indemnify it for costs and expenses:

> Morbark will indemnify Doggett for "any claims for injury, death, loss, damage, or expense, including attorney fees" <u>under the following circumstances</u>:"
>
> . . .
>
> d) resulting from any product defects or design defects related to manufacture or production of the Goods or parts[.]

[Doc. 37-2].

Doggett argues that the plain language of the Dealer Agreement requires Morbark to "indemnify and hold [Doggett] harmless against any claims for … damages, or expense, including attorney fees … resulting from any product defects or design defects related to manufacture or production of the [Tub Grinder]." [Doc. 37-1, p. 7]. Doggett further argues that the Dealer Agreement requires Morbark to indemnify Doggett for "any breach of this Agreement by Company [i.e., Morbark.]"

[*Id.*]. Doggett urges that because LCG made claims for damages arising from defects in the Tub Grinder that existed as of the time of its manufacture, Morbark's failure to provide indemnification constitutes a breach of the Dealer Agreement.

In response, Morbark argues that Doggett is not entitled to indemnification for two reasons: (i) Doggett did not incur any liability to LCG for the alleged defects of the Tub Grinder; and (ii) there has been no determination that LCG's issues with the Tub Grinder were, in fact, redhibitory defects, and therefore, the threshold indemnification requirement of the Dealer Agreement was not triggered.

As discussed above, the Court must first determine whether the indemnity provision at issue is ambiguous. Here, the indemnity provision contains no limiting language and facially applies to any and all claims "resulting from any product defects or design defects related to manufacture or production of the [g]oods or parts[.]" The Court finds that this contractual language is clear and unambiguous and leads to no absurd consequences. It must therefore be enforced as written and the Court must now determine whether indemnification is owed as a matter of law.

Doggett urges in its Motion that Morbark is required to indemnify it simply because LCG "made claims for damages arising from defects in the Tub Grinder that existed as of the time of its manufacture." But that is not what the indemnification provision provides. Rather, the indemnity provision requires Morbark only to indemnify Doggett for "any claims for injury, death, loss, damage, or expense, including attorney fees … d) resulting from any product defects or design defects related to manufacture or production of the Goods or parts[.]" Thus, the plain

language of the indemnification provision shows that the duty to indemnify is not triggered by the filing of claims; but rather is triggered by a finding of a design or manufacturing defect.

Morbark settled with LCG without admitting liability. As such, although LCG's lawsuit alleged a redhibition claim against Morbark, there has been no finding by this Court or any other that the Tub Grinder contained a manufacturing or design defect. Nor has Doggett provided the Court with summary judgment evidence establishing the absence of a material factual dispute on this issue. Whether Morbark produced a defective product is therefore a question of fact that precludes entry of summary judgment.[2]

## CONCLUSION

For the reasons stated herein, this Court concludes that Doggett's MOTION FOR PARTIAL SUMMARY JUDGMENT (the "Motion") [Doc. 37] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 8th day of January 2024.

*[signature]*
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE

---

[2] Specifically, Morbark and Doggett dispute whether the problems experienced by LCG with the Tub Grinder were caused by defects in Morbark's design and manufacturing process or by faulty repairs made by Doggett. This is an issue of fact that must be determined at the trial of this matter.